# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DIANA LYNN FOSTER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-18-211-RAW-SPS |
| | ) |
| **COMMISSIONER of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Diana Lynn Foster requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-nine years old at the time of the administrative hearing (Tr. 631). She completed her GED and has worked as material handler and security guard (Tr. 22, 168). The claimant alleges that she has been unable to work since May 20, 2008, due to diabetes and problems with her neck, shoulders, arms, hands, and back (Tr. 167).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and she meets the insured status requirements through December 30, 2013. Her application was denied. ALJ Doug Gabbard, II, initially dismissed the claimant's request for a hearing in light of a previous application for disability insurance benefits, but the Appeals Council vacated the dismissal in light of new and material evidence submitted by the claimant's physician. On remand from the Appeals Council, ALJ Gabbard conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 28, 2017 (Tr. 11-24). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a reduced range of medium work as defined in 20 C.F.R. §§ 404.1567(c), *i. e.*, she could lift/carry/push/pull

fifty pounds occasionally and twenty-five pounds frequently and stand/walk and sit six hours in an eight-hour workday, but that she could only occasionally reach, including overhead bilaterally, and occasionally grasp bilaterally (Tr. 16). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, furniture rental clerk and counter clerk (Tr. 22-23).

## Review

The claimant asserts that the ALJ erred: (i) by failing to properly account for treating physician opinions in the record, and (ii) by failing to properly assess her RFC, including the ALJ's finding that she could perform medium work.[2] The undersigned Magistrate Judge agrees that the ALJ erred in his analysis, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of cervical spine degenerative disc disease, bilateral carpal tunnel syndrome status post bilateral release, and bilateral shoulder degenerative joint disease status post surgery, as well as the nonsevere impairments of obesity, diabetes mellitus type II, history of chronic gastritis and GERD, ventral hernia, atherosclerosis, and nicotine abuse (Tr. 14). The relevant medical evidence reveals that the claimant was injured on the job twice, in 2004 she injured her wrists and in August 2005 she injured her cervical spine, bilateral shoulders, and bilateral arms. She

---

[2] The undersigned Magistrate Judge notes that the claimant's counsel has failed to comply with LCvR 5.2(a) and 7.1(c) regarding length, format, and the requirements regarding an indexed table of contents, but nevertheless proceeds on the merits of the arguments.

underwent bilateral carpal tunnel releases, on October 28, 2004 for the right hand and wrist, and January 25, 2005 for the left hand and wrist (Tr. 323).  Additionally, she underwent two left shoulder surgeries and one right shoulder surgery (Tr. 226).  In November 2005, Dr. Patrick Fahey found the claimant temporarily partially disabled since August 18, 2005 due to cumulative trauma from the injury on that date (Tr. 233).  She continued to complain of pain and neuropathies in her arms and wrists, but an EMG was negative and she was found to have reached maximum medical improvement as to her hands and arms on September 26, 2006 (Tr. 241, 246).  However, she was also referred for further evaluation of her shoulders at that time (Tr. 241).

On May 30, 2007, she underwent left rotator cuff repair, and then released to full duty without restrictions on October 30, 2007 (Tr. 255, 280).  A March 2008 MRI of the left shoulder revealed, *inter alia*, intermediate signal intensity within the supraspinatous tendon consistent with either postoperative changes or tendinosis, as well as subacromial bursitis (Tr. 283).  She underwent a redo decompression with acromioplasty and redo cuff repair of the left shoulder on May 11, 2009 (Tr. 290).  As to her right shoulder, a March 2008 MRI revealed, *inter alia*, bursitis and mild to moderate hypertrophic degenerative changes at the acromioclavicular joint, and she underwent acromioplasty, coracoacromial ligament release, bursectomy, and repair of supraspinatus on her right shoulder on July 28, 2008 (Tr. 284, 311).  She continued to complain of pain in both shoulders.  On October 2, 2009, the claimant's treating physician at Tulsa Bone and Joint found that she had reached maximum medical improvement, noting that she could not go back to her physical labor jobs and recommending computer work or data entry (Tr. 288).  He further imposed a

permanent lifting restriction of thirty pounds, as well as no reaching overhead or above the chest (Tr. 288).

On January 4, 2010, Dr. Richard Hastings conducted an outpatient evaluation of the claimant at Harvard Medical Clinic. He reviewed many of the claimant's medical records and examined her that day, noting she continued to complain of cervical spine soreness, left elbow pain, and weakness in the right elbow. He found she had range of motion impairments of the cervical spine, as well as left and right shoulder, and left and right elbow (Tr. 327-335). Based on these impairments, he found she was 100% permanently totally disabled, and that she would need continuing medical maintenance in order to maintain her clinical condition (Tr. 335).

On March 22, 2010, Rehabilitation Consultant Bruce Smith conducted a vocational evaluation of the claimant (Tr. 338). He administered several vocational and cognitive tests and cited to the Dictionary of Occupational Titles as reference for how he classified work categories (Tr. 343). Following the testing, Mr. Smith concluded that the claimant's low test scores meant that she was not a candidate for retraining, that she could not return to her past relevant work, and that her use of the prescription medication Lortab prevented her from being employed. He believed that she was not employable because she could not perform the full range of even sedentary work, and she was therefore permanently and totally disabled (Tr. 343-344).

On December 20, 2010, Dr. John Munneke conducted a physical medicine and pain management evaluation of the claimant (Tr. 345). He noted that she had some range of motion restrictions of the cervical spine and shoulders, as well as mildly positive Tinel's

-6-

signs bilaterally and 3/5 grip strength (Tr. 348). He found that the claimant would benefit from conservative medical management and referred her to another physician, Dr. Scott Anthony (Tr. 349).

On August 17, 2011, Dr. Anthony examined the claimant and noted her continued complaints of bilateral shoulder pain following her successful surgeries, residual carpal tunnel symptoms with numbness and tingling in both hands, and persistent neck pain (Tr. 455).

On July 18, 2012, Dr. Stephen Wilson wrote a "Multiple Injury Trust Fund Claim/PTSD Report" in which he stated that the claimant continued to suffer from constant pain in her neck, exacerbated by activities requiring repetitive head movements, prolonged flexion of the neck, overhead work, and lifting, as well as pain and weakness in her bilateral shoulders causing restricted range of motion, in addition to pain and weakness in her bilateral arms/elbows (Tr. 228). He found that she could not lift/carry more than five to ten pounds, or perform activities involving bending, twisting, squatting, or overhead work, and that she could only tolerate 30-40 minutes of sitting or 15-20 minutes of standing before needing to change positions (Tr. 228-229). He concluded that she was permanently totally disabled from any gainful employment (Tr. 229).

On November 19, 2012, Dr. Hastings conducted another examination (nearly two years later) of the claimant (Tr. 355). He again reviewed the medical records and the claimant's history of injuries, noting that she required prescription medication to maintain her current condition, then examined her for impairments to her cervical spine, shoulders, elbows, and wrists (Tr. 355-364). He found her to be 100% permanently totally disabled,

stating that "When a multiplicity of parts has been injured or re-injured, an adverse synergistic exponential factor occurs upon the whole man structure. This synergistic exponential effect results in a material increase in the whole man impairment." (Tr. 364).

On March 1, 2013, Dr. Anthony noted the claimant continued to see him for complaints of significant neck pain, and he noted it was exacerbated by weather changes (Tr. 463).

On August 23, 2013, Dr. Anthony completed a physical RFC assessment form, in which he indicated that the claimant could lift/carry less than ten pounds occasionally and frequently, and that she could stand/walk and sit less than two hours in an eight-hour workday, as well as periodically alternate sitting and standing, and that she was limited in pushing/pulling for both the upper and lower extremities (Tr. 367-368). He further indicated that she could never perform manipulative or postural limitations, and that she needed to avoid exposure to all hazards (Tr. 368-369).

On September 8, 2015, Dr. Anthony wrote a letter in which he stated that the claimant had been given a permanent lifting restriction in October 2009 of no greater than thirty pounds, and no reaching overhead or above the chest. He then stated that in August 2013 he had given the claimant the restrictions of being unable to sit or stand/walk for more than thirty minutes at one time, being unable to sit, stand, and walk each for more than one hour in an eight-hour workday (Tr. 396). He further stated that she could lift/carry 0-5 pounds infrequently, and never more than 6-10 pounds, and that she could not use her upper extremities for repetitive motion or movement including grasping, gripping, pushing, or pulling, and that her hands were restricted in fingering, feeling, and gripping (Tr. 397). He

-8-

stated that these restrictions should have been in place May 20, 2008, noting that she had been taken off right shoulder restrictions on that day, but that her neck, arm, and hand complaints were not accounted for by the physician at that time (Tr. 397).

There were no opinions from state reviewing physicians in this record.

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as some of the medical evidence in the record.  As to Dr. Marberry's 2009 finding that the claimant had reached maximum medical improvement, he made no mention of the permanent restrictions, instead focusing on Dr. Marberry's statements that she should "do some stretching and she could still do some strengthening" (Tr. 18).  He also pointed out where Dr. Anthony reported the claimant had some improvement with pain medication (Tr. 18).  He noted that Dr. Hastings and Dr. Wilson both found the claimant permanently totally disabled, but gave those opinions "very little weight" because:  (i) she was only in acute distress on one visit with Dr. Anthony; (ii) Dr. Munneke, although he made no functional limitation findings, had only recommended conservative medical management; and (iii) her treatment was routine and conservative (Tr. 18-19).  Indeed, despite Dr. Munneke's lack of proffered functional limitations, the ALJ relied on his opinion heavily to discredit those of Dr. Anthony, Dr. Hastings, and Dr. Wilson (Tr. 19).  The ALJ further found that Dr. Anthony's 2015 opinion was inconsistent with his treatment through the date last insured, because she only took pain medication on an as-needed basis and she had reported doing better on her medication regimen in 2011 (Tr. 20).  He then assigned Dr. Munneke's opinion little weight because, "[w]hile all providers found some decreased upper extremity strength, she had no upper extremity atrophy, and her shoulders were

-9-

negative for impingement and rotator cuff insufficiency" (Tr. 21).  He further gave Mr. Smith's vocational evaluation little weight because he was not a medical source and could not provide a medical opinion.  In short, the ALJ rejected every treating and consulting physician opinion which provided a functional assessment of the claimant's ability to do work, in favor of a statement by Dr. Munneke that the claimant only needed conservative medical management, in order to find she could perform medium work.

The undersigned Magistrate Judge finds that the ALJ failed to properly assess the evidence regarding the claimant's physical impairments.  The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)."  Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).  Here, the ALJ ignored or discredited every piece of evidence related to the claimant's functional limitations, and indeed completely ignored the permanent lifting restriction placed on the claimant back in 2009.  *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded

that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Indeed, the ALJ appeared to focus solely on records with positive findings regarding the claimant's physical impairments in a deliberate attempt to pick and choose among the evidence in order to avoid finding the claimant disabled. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. This was error. Instead, the ALJ should have explained why the claimant's severe physical impairments, supported by repeated treating and consultative physician opinion findings, did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

Moreover, the medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*,

350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians, of which there were several in this case. *See Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman*, 362 F.3d at 681 (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer*, 742 F.2d at 385-386. This is of

-12-

particular concern where, as here, there is a good indication that the ALJ focused on times when exams had more positive results, and appeared to dismiss without explanation, among other things, the claimant's possible limitation to sedentary work and confirmed permanent lifting restrictions.  20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.").  *See also See Langley,* 373 F.3d at 1119 at ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]."), *quoting Watkins,* 350 F.3d at 1300.

Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis.  On remand, the ALJ should properly evaluate *all* the evidence in the record.  If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence.  Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith.  Any objections to

-14-

this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

    **DATED** this 3rd day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**